*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
*2325 E. Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*Telephone: (602) 274-1100*
*Facsimile: (602) 274-1199*
*Andrew S. Friedman (AZ Bar No. 005425)*
*Ty D. Frankel (AZ Bar No. 027179)*
*afriedman@bffb.com*
*tfrankel@bffb.com*

***BUNTIN, ETHEREDGE & FOWLER, L.L.C.***
*185 N. Oates Street*
*Dothan, Alabama 36302*
*Telephone: (334) 793-3377*
*Facsimile: (334) 793-7756*
*Stephen T. Etheredge (AL Bar No. 8149H69S)*
*Dustin J. Fowler (AL Bar No. 8960S69F)*
*Dustinjfowler@hotmail.com*
*setheredge@graceba.net;*
*(Pending pro hac vice admission)*

*MOTLEY, MOTLEY & YARBROUGH, LLC*
*117 East Main Street*
*Dothan, Alabama 36301*
*Telephone: (334) 793-0051*
*Derek E. Yarbrough (AL Bar No. 6664R63D)*
*dey@graceba.net*
*(Pending pro hac vice admission)*

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Crystal Jackson,<br><br>Plaintiff,<br>v.<br><br>Inmate Services Corp.; Chris Weiss and Jane Doe Weiss; and Ryan Moore and John Doe Moore,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Crystal Jackson ("Jackson") alleges the following for her Complaint against Defendants Inmate Services Corp., Chris Weiss and Jane Doe Weiss, and Ryan Moore and John Doe Moore (collectively "Defendants"):

1. At all times relevant to this Complaint, Jackson was a resident of Blakely, Early County, Georgia.

2. Defendant Inmate Services Corp. ("Inmate Services") is a corporation with its principal place of business located in West Memphis, Arkansas, and at all times relevant conducted interstate business in numerous states, including Arizona.

3. Defendant Weiss at all times relevant was, and upon information and belief, is currently a resident of the State of Arkansas, and was employed as a security guard driver for Inmate Services conducting his employment duties throughout the United States, including Arizona. Jane Doe Weiss is the spouse of Defendant Weiss who, upon information and belief, is also a resident of the State of Arkansas. The actions of Defendant Weiss relevant to this action were taken in furtherance of his marital community.

4. Defendant Moore at all times relevant was, and upon information and belief, is a resident of the State of Arkansas, and was employed as a security guard driver for Inmate Services conducting her employment duties throughout the United States, including Arizona. John Doe Moore is the spouse of Defendant Moore who, upon information and belief, is also a resident of the State of Arkansas. The actions of Defendant Moore relevant to this action were taken in furtherance of her marital community.

5. Inmate Services contracts with various law enforcement agencies to transport prisoners from one jurisdiction to another. Upon information and belief, Inmate Services had a contract with Houston County, Alabama, for the transport of prisoners, including Jackson.

6. In September 2016, Inmate Services acted as an agent of Houston County, Alabama in transporting Jackson from Colorado to the Houston County Jail in Alabama. Inmate Services is responsible for administering its operations in a manner consistent with constitutional guarantees and federal and local law.

7. Defendants Weiss and Moore, at the time of the events described herein, were employed by Inmate Services as security guard drivers and were agents of Houston County, Alabama. They were responsible for ensuring they follow constitutional, federal, and local law as part of their employment and in furtherance of their employment duties for Inmate Services. Defendants Weiss and Moore are sued in their individual capacities.

8. At all relevant times, Defendants acted under the color of state law, and Defendants Weiss and Moore were acting within the course and scope of their employment.

**JURISDICTION**

9. This Court has jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 because those claims arise under the Constitution of the laws of the United States, pursuant to 28 U.S.C. § 1343(a)(3) and (a)(4) because this action seeks to redress the deprivation, under the color of state law, of Jackson’s civil rights and failed to develop or implement policies that would prevent a deprivation of her constitutional rights. In addition, Jackson’s claim arises under 42 U.S.C. § 1983. Specifically, Inmate Services is liable under 42 U.S.C. § 1983 because it was acting under color of state law by and through its contractual agreement with Houston County, Alabama, and through its performance of duties that are traditionally a State function. While carrying out these duties, Inmate Services undertook a course of action that violated Jackson's civil rights, causing her substantial damages.

10. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Jackson's State law claims because they are so related to the claims within the Court's

original jurisdiction that they form part of the same case or controversy under Article 3 of the United Stated Constitution.

11. On information and belief, this Court also has jurisdiction pursuant to 28 U.S.C. § 1332.

12. On information and belief, Defendant Inmate Services Corp. is incorporated in Arkansas and has its principal place of business in Arkansas.

13. On information and belief, Defendant Weiss is a citizen of Arkansas, as is his spouse, Jane Doe Weiss.

14. On information and belief, Defendant Moore is a citizen of Arkansas, as is her spouse, John Doe Moore.

15. Jackson is a citizen of Georgia.

16. On information and belief, complete diversity of citizenship exists.

17. The amount in controversy exceeds $75,000, exclusive of interest and costs.

**VENUE**

18. Venue is proper in the United States District Court of Arizona pursuant to 18 U.S.C. § 1391(b)(c) because Defendants transported Plaintiff through this District where a substantial part of the events giving rise to the claim occurred.

**FACTS**

19. On or about September 1, 2016, Jackson was detained by the State of Colorado for extradition and transportation to Houston County, Alabama.

20. Houston County, Alabama entered into a contractual agreement with Inmate Services, a private extradition transportation company engaged in the business of transporting prisoners and pretrial detainees, for the transport of Jackson from Colorado to Houston County, Alabama.

21. Defendant Inmate Services profits from the transportation of inmates and pre-trial detainees across the United States. Inmate Services and its employees are charged with the safety and welfare of those persons placed in their custody.

22. During the course of transportation undertaken by Inmate Services integral to its business, inadequately trained security guards have complete control and domination over the inmates and detainees in their custody. They dictate when and what they will eat; when and where they will sleep; and they even dictate when and whether they can bathe or use restroom facilities. They are, during the course of the transport, the master of the incarcerated inmates for whom they are providing transportation.

23. Security guard drivers employed by Inmate Services acting in the course and scope of their employment had custody and control over prisoners for many days. During that time, they operate without direct supervision. They are responsible for the health and safety of the prisoners in their custody, including ensuring they provide adequate food, water, toilet facilities, and other necessities to the prisoners.

24. During the transport, the security guard drivers are responsible for monitoring the prisoners at all times, including bathroom breaks.

25. Upon information and belief, Inmate Services knew of prior complaints of misconduct regarding its security guard drivers.

26. Inmate Services took custody of Jackson for the purpose of extradition transport in Colorado on or about September 17, 2016, on a charge arising out of Houston County, Alabama, for failure to comply with a Pre-Trial Diversion Agreement.

27. Jackson was transported by Inmate Services' employees, Defendants Weiss and Moore, as a passenger in a van operated by Defendants.

28. During Jackson's transport by Inmate Services from Colorado to Houston County, Alabama, Defendants made multiple stops, pick-ups and drop-offs involving other inmate passengers over a period of eight days in multiple States, including Arizona.

29. During this time, Jackson was handcuffed and/or shackled, required to sit up on a hard plastic seat, and unable to lie down to sleep. The transportation vehicle was crowded with other detainees or prisoners being transported under the same inhumane conditions.

30. Jackson received bottled water sparingly and only when Defendants Moore and Weiss decided to purchase it at their whim. Jackson received only fast food for meals, generally limited to a sausage biscuit for breakfast and a hamburger or cheeseburger for lunch and dinner.

31. Jackson was not permitted to bathe or otherwise wash her face and body.

32. During Jackson's multiple day transport when she was in the custody of Inmate Services, Jackson was forced by an Inmate Services employee to perform sex acts on him against her will.

33. On September 20, 2016, Jackson was escorted from the Inmate Services transport van by Inmate Services employee, Defendant Weiss, to the restroom facilities. Her arms were shackled at the waste as Defendant Weiss performed his employment duty of escorting her to the restroom. The other detainees in Inmate Services' custody were instructed to remain in the transport van with Inmate Services employee, Defendant Moore.

34. It was common for Defendant Moore to sleep while Defendant Weiss performed his duties. This included times when Defendant Weiss, the male member of the team, would escort female detainees to the restroom facilities rather than have Defendant Moore, a woman, perform that job duty.

35. Defendant Weiss escorted Defendant Jackson to the restroom facilities in Arizona on September 20, 2016, and Defendant Moore appeared to be asleep in the transport van with the other detainees in her custody and supervision.

36. When Jackson arrived at the restroom facility under Defendant Weiss' direction and custody, Defendant Weiss followed her into the restroom and violently forced her into the wall and pressed her face up against it. At the same time as he forced her against the wall, Defendant Weiss ripped and yanked Jackson's pants down and forced his penis into her vagina while Jackson pleaded with him to stop.

37. Jackson was also forced by Defendant Weiss against her will to perform oral sex and other sexual acts on Defendant Weiss over the course of time she was in the custody of Inmate Services' employees, Defendants Weiss and Moore.

38. Jackson did not consent to any of these sexual assaults involving Defendants.

39. Defendant Weiss threatened Jackson that if she reported what he had done or complained to anyone, he would see that there were additional charges against her and she would be left in a jail in Arkansas.

40. After the sexual assault, Defendant Weiss drove the Inmate Services' transport van to a Walgreens in Arizona where he purchased new clothes for Jackson to replace the clothes she was wearing because they were torn and bloody from the sexual assault. This was the first time in days Jackson was allowed to change her clothes.

41. Defendant Moore, in her capacity as an employee of Inmate Services and transporting Jackson on the day of the sexual assault, had knowledge of and/or witnessed the wrongful sexual abuse/assault of Jackson, but took no action to protect Jackson.

42. The forcible sexual assault traumatized Jackson.

43. Upon information and belief, Inmate Services was aware of Defendant Weiss' proclivity for sexual assault based upon its knowledge of a prior sexual assault by Defendant

Weiss on another transport detainee during the course and scope of his employment. Yet, while armed with such knowledge, Inmate Services continued to employ Defendant Weiss and placed him in a position of authority and control over female transport detainees, including Jackson.

44. Jackson's significant trauma and damages were caused at least in part by Defendants joint and several failure to institute and carry out appropriate training, education, and custody standards addressing the transportation of prisoners like Jackson and to adequately screen and monitor Inmate Services' security guard drivers in charge of vulnerable prisoners being transported.

**COUNT ONE**

**Negligence – Defendant Inmate Services**

45. Jackson incorporates by reference all of the above allegations as though fully set forth herein.

46. Defendant Inmate Services had a duty to use reasonable care and competence in (a) selecting, training, and supervising those employees charged with the responsibility of transporting female inmates/detainees; (b) adopting and enforcing appropriate policies and practices directed to the safe transport of detainees; (c) terminating or otherwise disciplining and/or reassigning employees upon receipt of knowledge of wrongful conduct; (d) notifying law enforcement upon receipt of knowledge of illegal conduct; (e) protecting Jackson from sexual assault; (f) obtaining medical treatment for Jackson; and, (g) following and applying all governmental guidelines relating to the safe transport of detainees.

47. At all times relevant, Defendant Weiss and Defendant Moore were employees and agents of Inmate Services and were acting under the authority provided to them by Inmate Services and were further acting within the course and scope of their employment with Inmate Services.

48. Inmate Services had a duty to properly train its agents, Defendants Weiss and Moore, in proper and acceptable actions relating to transport procedures and as to the acceptable and unacceptable actions as relates to the treatment of and interaction with persons under their supervision and control. Inmate Services has a further duty to properly supervise its agents and employees to prevent violations of recognized protocols in the transport of persons in its custody and to prevent unlawful acts, including violations of the Constitution and federal and state laws.

49. As employees and/or agents of Inmate Services, Defendants Weiss and Moore were in a position to exercise total authority and control over female inmates, dominating the inmates every action during the course of transport. Therefore, Inmate Services has a heightened duty to ensure that its agents abided by recognized protocols, policy, practice and law.

50. Inmate Services breached its duty to properly train and supervise its employees, specifically Defendants Weiss and Moore, and such breach of duty proximately caused physical and mental injuries to Jackson arising from sexual abuse, sexual assault, and inhumane conditions.

51. The breach of duty by Inmate Services was in each instance negligent, willful, wanton and/or reckless.

52. As a proximate result of Inmate Services' negligent, willful, wanton and/or reckless failure to meet and perform its duties, Jackson was caused to suffer injuries and was otherwise damaged. Inmate Services' actions were willful, malicious, and performed with reckless disregard for Jackson's rights and feelings.

**COUNT TWO**

**BREACH OF CONTRACT – Defendant Inmate Services**

53. Jackson incorporates by reference all of the above allegations as though fully set forth herein.

54. Inmate Services entered into a contract with the Houston County Sheriff's Department for the transport of Jackson from the facility where she was detained in Colorado to Houston County, Alabama. Implied in the terms of said contract was the requirement that Inmate Services protect the health and safety of Jackson, while she was in the custody of Inmate Services, in the same manner that she would be protected as an inmate of the State.

55. Jackson was the intended third party beneficiary of the implied provisions for protection of her health and safety under the terms and conditions of the contract. The implied provisions arise directly from the duty owed by Houston County, Alabama to all individuals being transported by Houston County, Alabama and/or its agents.

56. Inmate Services breached its contract by failing to have policies, training, and procedures in place that would protect Jackson from sexual abuse and sexual assault by those employees and agents of Inmate Services charged with the responsibility of transporting her pursuant to the terms of the contract with Houston County, Alabama.

57. Inmate Services also breached its contract when it failed to provide safe and humane transportation to Jackson.

58. As a direct and proximate result of the breach of the contract by Inmate Services, Jackson a direct third party beneficiary, suffered physical injury and severe mental and emotional distress, and was injured and damaged.

**COUNT THREE**

**NEGLIGENCE -- Defendant Chris Weiss**

59. Jackson incorporates by reference all of the above allegations as though fully set forth herein.

60. At all times relevant Defendant Weiss was acting as an employee of Inmate Services and his actions can be imputed to Inmate Services by vicarious liability under the legal doctrine of respondeat superior.

61. Between September 17, 2016 and September 24, 2016, Defendant Weiss owed Jackson a duty to respect her privacy and safety and not to negligently cause her injury.

62. Defendant Weiss breached his duty to Jackson by failing and refusing to respect her right to privacy as it related to her body and further breached his duty not to negligently injure her by: (a) failing to refrain from sexually assaulting Jackson; (b) failing to obtain medical treatment for Jackson; (c) failing to report the sexual assault to law enforcement; and (d) transporting Jackson under inhumane and tragically unsafe conditions.

63. As a direct and proximate result of Defendant Weiss' failure to act with ordinary care, Jackson suffered injury and damages, including physical injury and severe mental and emotional distress.

64. Defendant Weiss's actions were willful, malicious, and performed with reckless disregard for Jackson's rights and feelings.

**COUNT FOUR**

**NEGLIGENCE —Defendant Ryan Moore**

65. Jackson incorporates by reference all of the above allegations as though fully set forth herein.

66. At all times relevant, Defendant Moore was an agent and/or employee of Inmate Services and her actions can be imputed to Inmate Services by vicarious liability under the legal doctrine of respondeat superior.

67. Between September 17, 2016 and September 24, 2016, Defendant Moore owed Jackson a duty to protect her privacy and not to negligently cause or allow her injury.

68. Defendant Moore breached her duty to Jackson by failing and refusing to respect and protect her right to privacy as it related to her body and further breached her duty not to negligently allow her injury by: (a) failing to protect her from sexual assaults by Defendant Weiss; (b) failing to obtain medical treatment for Jackson; (c) failing to report the sexual assault to law enforcement; and (d) transporting Jackson under inhumane and tragically unsafe conditions.

69. As a direct and proximate result of Defendant Moore's failure to act with ordinary care, Jackson suffered injury and damages, including physical injury and severe mental and emotional distress.

70. Defendant Moore's actions were willful, malicious, and performed with reckless disregard for Jackson's rights and feelings.

**COUNT FIVE**

**Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983 – All Defendants**

71. Jackson incorporates by reference all of the above allegations as though fully set forth herein.

72. At all times relevant Inmate Services, in accepting the transfer of custody of Jackson for transport from Colorado to Houston County, Alabama, was acting under color of State law by and through its contractual relationship with Houston County, Alabama.

73. At all times relevant, Inmate Services, and its employees, Defendants Weiss and Moore, were acting as agents for the State of Alabama and for Houston County, Alabama by and through the course and scope of their employment for Inmate Services that required them to carry out the contractual relationship between Inmate Services and Houston County, Alabama. By engaging in the transport of such prisoners, Defendants acted in such close relationships to the State that their actions can be said to be those of the State itself because, among other things, such activity is a traditional State function.

74. Inmate Services and its employees, Defendants Weiss and Moore, were obligated to care for Jackson as a detainee in their custody. Nevertheless, Defendants acted with deliberate indifference to the welfare of Jackson despite knowledge of substantial risk of serious harm to Jackson.

75. Inmate Services had actual and constructive knowledge of substantial risk of serious harm to Jackson, by and through its custom of allowing security guard drivers of Inmate Services' vans to be completely unsupervised during all extraditions.

76. Moreover, Inmate Services had actual knowledge that one or more of its employees had sexually assaulted transportees in the past.

77. Despite this knowledge, Defendants Weiss and Moore were not supervised by anyone from Inmate Services between September 17, 2016 and September 24, 2016. At no time did any Inmate Services supervisor or management personnel undertake to intervene or determine what activities Defendants Weiss and Moore were engaging in while driving for multiple days with a female detainee on a transport.

78. Inmate Services' policies or customs of allowing male drivers to remain unsupervised while extraditing prisoners demonstrates deliberate indifference to the rights of those female prisoners or pretrial detainees who come into contact with employees of Inmate Services. Inmate Services is liable for the violations of Jackson's civil rights because

these violations were directly caused by Inmate Services' failure to train and/or supervise its agents adequately.

79. Defendants Weiss and Moore were acting under the color of State law by and through their employment with Inmate Services. Both were hired as security guard drivers to engage in the traditional State functions of incarceration, including the shackling and handcuffing of prisoners and determining when the prisoners would eat, sleep, use restrooms, or bathe. Defendants acted with deliberate indifference to Jackson's welfare despite knowledge of a substantial risk of serious harm to Jackson.

80. Defendants, through their actions and policies, engaged in deliberate and outrageous invasion of Jackson’s constitutional rights that shock the conscience.

81. Jackson was subject to unreasonable seizures and invasions of her right to privacy, and Defendants violated her right to bodily integrity.

82. Such deliberate indifference was, among other things, a violation of Jackson's Eighth and Fourteenth Amendment rights as set forth in the Constitution of the United States. Defendants' conduct violated Jackson's constitutional rights thereby violating her rights as protected under 42 U.S.C. § 1983.

83. Inmate Services’ policies, customs, and practices regarding the transportation of inmates and particularly the transportation of Jackson violated the rights of Jackson under the Fourth, Eighth, and Fourteenth Amendments, to be free from unlawful conditions of confinement and cruel and unusual punishment, and violated the rights of Jackson under the Fourteenth Amendment, to due process and privacy.

84. Inmate Services’ actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to Jackson’s Fourth, Eighth, and Fourteenth Amendment rights as secured by the U.S. Constitution, or were wantonly or oppressively done.

85. The deprivations of Jackson's rights were not reasonably related to the furtherance of any legitimate interest in security or any other legitimate interest.

86. As a direct and proximate result of Inmate Services' actions and inactions, Jackson suffered physical and psychological injuries, akin to torture, entitling her to receive compensatory and punitive damages.

87. As a direct and proximate result of the breach of Jackson's rights in each of the above mentioned claims for relief, Jackson sustained and continues to sustain substantial injuries including physical and emotional harms; the horrific assaults and abuse under the most vulnerable of conditions have predictably negatively impacted her mental state and abilities to function. Jackson is entitled to substantial compensation for the harms resulting from the unconstitutional and illegal acts by Defendants.

88. Jackson hereby demands a trial of her claims by jury to the extent authorized by law.

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(1) For declaratory and injunctive relief declaring illegal and enjoining, preliminarily and permanently, Defendant Inmate Services' policies, customs, or practices of transporting detainees and prisoners under the conditions described herein;

(2.) For compensatory, general, and special damages for Plaintiff against Defendants in an amount to be proven at trial;

(3) Punitive and exemplary damages as against Defendants in an amount sufficient to deter and to make an example of those Defendants;

(4) Attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, and any other applicable statute; and

(5) For an award of any other further relief, as the Court deems fair, just, and equitable.

DATED: April 28, 2017.

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

*/s/ Ty D. Frankel*
Andrew S. Friedman
Ty D. Frankel
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

BUNTIN, ETHEREDGE & FOWLER, L.L.C.
Stephen T. Etheredge
Dustin J. Fowler
185 N. Oates Street
Dothan, Alabama 36302
Telephone: (334) 793-3377
Facsimile: (334) 793-7756

MOTLEY, MOTLEY & YARBROUGH, LLC
Derek E. Yarbrough
117 East Main Street
Dothan, Alabama 36301
Telephone: (334) 793-0051
dey@graceba.net

Attorneys for Plaintiff