SH

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Crystal Jackson,

Plaintiff,

v.

Inmate Services Corporation, *et al.*,

Defendants.

No. CV 17-01277-PHX-JJT (JZB)

**ORDER**

Plaintiff Crystal Jackson, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 and state law. (Doc. 1.) Defendants Inmate Services Corporation (ISC) and Ryan Moore move for summary judgment (Docs. 98, 106), and Plaintiff opposes (Docs. 112, 119).[1]

The Court will grant in part and deny in part ISC's Motion for Summary Judgment and grant in part and deny in part Defendant Moore's Motion for Summary Judgment as discussed herein.[2]

I. **Plaintiff's Complaint**

In her Complaint, Plaintiff alleges the following: in September 2016, she was detained by the state of Colorado for extradition and transportation to Houston County, Alabama. (Doc. 1 ¶ 19.) On September 17, 2016, ISC took custody of Plaintiff for transport,

---

[1] To date, Defendant Weiss has not filed a dispositive motion in this action, and the time to do so has expired. (*See* Doc. 167.)

[2] Also before the Court is Defendant ISC's Motion to Preclude Plaintiff's Expert Witness (Doc. 176), which will be addressed in a separate Order.

which was handled by Defendants ISC employees Chris Weiss and Ryan Moore. (*Id.* ¶¶ 26–27.) On September 20, 2016, during a stop in Arizona, Defendant Weiss escorted Plaintiff from the ISC van into a public restroom in Arizona and raped her. (*Id.* ¶¶ 33–38.) During this encounter, Defendant Moore was asleep in the transport van, and the other detainees remained in the transport van. (*Id.* ¶ 35.)

In Count One, Plaintiff brings a state law negligence claim against Defendant ISC for its negligent training and supervision of Defendants Weiss and Moore. (*Id.* ¶¶ 45–52.) In Count Two, Plaintiff brings a state law breach of contract claim against Defendant ISC and claims that she was a third-party beneficiary of the implied provisions of the contract between Defendant ISC and Houston County which required that Defendant ISC protect the health and safety of the detainees in its custody. (*Id.* ¶¶ 53–58.) In Counts Three and Four, Plaintiff brings state law negligence claims against Defendants Weiss and Moore, respectively, for failing to respect her right to bodily privacy and failing to obtain medical treatment for Plaintiff. (*Id.* ¶¶ 59–70.) In Count Five, Plaintiff alleges § 1983 claims under the Fourth, Eighth, and Fourteenth Amendments as to all Defendants.[3] Plaintiff claims that Defendant ISC has a policy or custom of allowing male drivers to remain unsupervised while transporting female detainees despite being aware "that one or more of its employees had sexually assaulted transportees in the past." (*Id.* ¶¶ 75–76, 78.) Plaintiff also claims that Defendants Weiss and Moore subjected her to unlawful conditions of confinement during the transport where she was not permitted to bathe and was fed "only fast food for meals, generally limited to a sausage biscuit for breakfast and a hamburger or cheeseburger for lunch and dinner." (*Id.* ¶¶ 30–31, 83.) Plaintiff also alleges that she was subjected to unreasonable searches and seizures and invasions of her right to bodily integrity. (*Id.* ¶ 81.) . . .

---

[3] Although Plaintiff stated the amendments under which she was pursuing her § 1983 claims, she does not clearly specify the nature of her federal claims, which makes it difficult for the Court to ascertain which legal standards to apply. Based on its review of the Complaint, the Court construes Plaintiff's allegations as bringing the following claims: failure to protect, failure to train and supervise, excessive force, and conditions of confinement.

1  ## II.     Summary Judgment Standard

2         A court must grant summary judgment "if the movant shows that there is no genuine

3  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

4  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The

5  movant bears the initial responsibility of presenting the basis for its motion and identifying

6  those portions of the record, together with affidavits, if any, that it believes demonstrate

7  the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

8         If the movant fails to carry its initial burden of production, the nonmovant need not

9  produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099,

10  1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts

11  to the nonmovant to demonstrate the existence of a factual dispute and that the fact in

12  contention is material, i.e., a fact that might affect the outcome of the suit under the

13  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

14  jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.

15  242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th

16  Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its

17  favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,

18  it must "come forward with specific facts showing that there is a genuine issue for trial."

19  *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal

20  citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

21         At summary judgment, the judge's function is not to weigh the evidence and

22  determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

23  477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw

24  all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited

25  materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

26  . . .

27  . . .

28  . . .

1    **III.    Relevant Facts**

2        **A.    ISC Policies and Procedures**

3        ISC is a private inmate transportation company that enters into contractual

4    agreements with agencies nationwide for the transportation of inmates. (Doc. 99 (ISC's

5    Statement of Facts) ¶ 4.) ISC's Policies and Procedures requires two drivers ("Agents")—

6    one male and one female—for all transports. (*Id.* ¶ 10.) According to the ISC Policies and

7    Procedures, all Agents are required to undergo a full background screening, drug testing,

8    CPR/first aid certification, psychological evaluation, and 40 hours of classroom training in

9    the proper handling and restraining of transportees. (Doc. 99-1 at 92 (ISC Ex. 5).)

10        ISC uses a standard 15-passenger van for transports. (Doc. 99 ¶ 12.) Agents

11    typically alternate driving shifts, with one Agent driving during the daytime while the other

12    sleeps, and vice versa for the nighttime shift. (Doc. 99 ¶ 11.) ISC policy prohibits Agents

13    from socializing or fraternizing with transportees, and "[t]here is zero tolerance level for

14    sexual misconduct." (*Id.* (ISC Policies and Procedures ¶¶ 1, 3–4).) If an Agent sees another

15    Agent acting inappropriately with a transportee, they must report it to ISC's owner, Randy

16    Cagle, immediately. (Doc. 99 ¶ 20.)[4]

17        Agents are required to keep an active supply of bottled water during transport. (Doc.

18    99-1 at 92 (ISC Policies and Procedures ¶ 15).) Agents are responsible for feeding

19    transportees, and approved restaurants include Burger King, Jack in the Box, Sonic,

20    Subway, Arby's, and Little Caesar. (*Id.* ¶ 15.) If a transportee's clothing become soiled

21    during transport, "[A]gents must stop at the nearby facility for donated clothes" or

22    "purchase items from a general store, if needed." (*Id.* ¶ 17.) Agents must keep and maintain

23    a full supply of hygiene kits and allow transportees to use them only at facilities. (*Id.* ¶ 20.)

24    During a transport, male Agents are required to escort male transportees to the restroom

25

26    _____

27        [4] Throughout her Response to Defendant ISC's facts, Plaintiff repeats the same statements to dispute Defendant ISC's factual statements, and oftentimes, Plaintiff's controverting facts do not address Defendant ISC's factual statement with any particularity. (*See* Doc. 111 ¶¶ 13(a)–(d), 15(a)–(d), 19(a)–(d), 20(a)–(d).) To the extent Plaintiff merely repeats boilerplate statements without specifically disputing the facts being presented by Defendant, Plaintiff fails to create a genuine issue as to those particular facts.

28

during restroom breaks, and female Agents are required to escort female transportees. (Doc. 99 ¶ 19.)[5]

ISC asserts that Agents are given a copy of the Policies and Procedures and are required to review and sign them. (Doc. 99 ¶ 15.) Plaintiff disputes this fact based on Defendant Moore's deposition testimony that she had never seen a copy of the Policies and Procedures prior to this action being initiated. (Doc. 111 (Pl.'s Resp. to ISC's Statement of Facts) ¶ 15(c).)

### B. Plaintiff's Transport

#### 1. Sexual Assaults

On September 1, 2016, Plaintiff, who was living in Colorado Springs, Colorado, was arrested pursuant to a warrant that had issued in Houston County, Alabama for shoplifting. (Doc. 99 ¶ 1.) Plaintiff was detained in the El Paso County Jail in El Paso, Texas until September 17, 2016, when she was taken into custody by Defendants ISC Agents Weiss and Moore for transport to Alabama. (*Id.* ¶ 21.) Plaintiff was seated in the front bench seat directly behind the center console. (Doc. 99 ¶ 22.) The center console of this particular van had a milk crate on the floor that contained files and other items. (*Id.*)

During this particular transport, Defendant Moore would drive during the day and sleep at night; she would sleep with a blanket over her head for privacy and to block out light and sound. (Doc. 104 (Def. Moore's Statement of Facts) ¶¶ 6, 8.)

During her deposition, Plaintiff stated that on the second night of the transport—on or about September 18, 2018—while Defendant Weiss was driving, he had Plaintiff come sit on the milk crate that was between his and Defendant Moore's seats. (Doc. 99 ¶ 24; Doc. 104 ¶ 34.) Defendant Weiss then proceeded to remove Plaintiff's handcuffs and touch her vaginal area outside of her clothes. (Doc. 99 ¶ 24.) At the time, Defendant Moore was asleep in the passenger seat with a blanket over her head. (*Id.*) Plaintiff testified that

---

[5] Plaintiff disputes this fact on the ground that restroom breaks "occurred at irregular intervals and the male inmates were often required to urinate in bottles and throw the urine out the window of the transport van." (Doc. 111 ¶ 19(e).) But this does not create a question of fact that ISC policy required same-sex escorts during bathroom breaks.

between September 19 and September 21, the sexual touching continued nightly and escalated to Defendant Weiss touching Plaintiff under her clothes, and her touching him and performing oral sex on him. (*Id.* ¶ 25; Doc. 104 ¶¶ 38–39.) Plaintiff further testified that on the night of September 22 or 23, 2016, Defendant Weiss stopped at a rest stop in Arizona, took her into the women's restroom and raped her while Defendant Moore and the rest of the transportees were asleep in the van. (Doc. 99 ¶ 26.) Plaintiff stated that afterwards, Defendant Weiss stopped at a Walgreens to buy Plaintiff new clothes. (*Id.* ¶ 27.) Defendant Weiss denies that he was inappropriate with Plaintiff and denies raping her. (*Id.* ¶ 27.)

Defendant Moore testified at deposition that on one occasion, while the transport was driving through Arizona, she woke up and Plaintiff was sitting between her and Defendant Weiss. (Doc. 99-1 at 85 (Moore Depo. at 36:22–25); Doc. 104 ¶ 51.) Defendant Moore stated that she observed Plaintiff's hand in Defendant Weiss's lap with his pants unzipped, and Plaintiff was "[g]iving him a hand job." (Doc. 111-1 at 47 (Moore Depo. at 122:22, 123:2–6, 13–14).) After observing this, Defendant Moore "confronted Plaintiff and asked Plaintiff if anything was going on," and Plaintiff denied that anything had happened between her and Defendant Weiss. (Doc. 104 ¶ 57.)

On September 22, 2016, Defendant Moore informed Cagle via text and phone conversation of what she observed between Plaintiff and Defendant Weiss the night before. (Doc. 99 ¶ 31; Doc. 111-1 at 37 (Moore Depo. at 47: 10–14).)[6] Cagle ordered Defendants Weiss and Moore to return to ISC headquarters in Arkansas with Plaintiff and the other transportees so that he could investigate the issue. (Doc. 99 ¶ 31.)

During a heated conversation at ISC headquarters, Defendant Weiss told Cagle that he had not engaged in any inappropriate conduct with Plaintiff and that he believed Defendant Moore was lying in order to get off of the transport. (*Id.* ¶ 33.) Cagle sent Defendant Weiss home after their conversation. (*Id.*) Defendant Weiss was placed on leave

---

[6] At deposition, Cagle testified that Defendant Moore only told him that Defendant Weiss and Plaintiff were "playing with each other," but Defendant Moore never told him that she saw Plaintiff touching Defendant Weiss' penis. (Doc. 99 ¶¶ 40–41.)

until the investigation into Plaintiff's allegations was complete. (*Id.* ¶ 47.) Cagle then brought Plaintiff into his office to personally interview her, and Plaintiff denied any inappropriate contact between her and Defendant Weiss. (*Id.* ¶ 34.) She denied that Defendant Weiss had sexually assaulted her. (*Id.* ¶ 35.) During her deposition, Plaintiff testified that she did not disclose the sexual assault to Cagle because Cagle did not want to hear anything she had to say and because Defendant Weiss threatened that if she told anyone, he would drop her off at a jail and leave her there and/or have her charged with a crime. (*Id.* ¶ 38; Doc. 111 ¶¶ 34(a), (c).)

After speaking with Defendants and Plaintiff and deciding to send Defendant Weiss home, Cagle allowed Defendant Moore to continue the transport and take Plaintiff to the Houston County Jail (HCJ). (Doc. 99 ¶ 45.) Plaintiff was dropped off at the HCJ on September 24, 2016. (*Id.*) Upon her arrival at the jail, Plaintiff notified officers of the sexual assault, and she was taken for an examination at Southeast Alabama Medical Center. (Doc. 114 ¶ 43.) Due to the length of time between the alleged assault and Plaintiff's arrival in Houston County, the results of the rape kit examination were inconclusive. (*Id.* ¶ 44.) Plaintiff was released from the HCJ approximately one week later. (*Id.* ¶ 45.) The HCJ reported the incident to the FBI. (*Id.* ¶ 46.)

### 2.    Transport Conditions

With respect to the conditions during Plaintiff's transport, Plaintiff testified that she and the other transportees

> [N]ever got three meals a day. Two, if that. And a meal would consist of, say, one biscuit or—and then we didn't get soda or anything like that, which I understand soda was a privilege, but it would be—like I remember we went through McDonald's line one time. And Ryan had forgot to—well, she said she forgot—to take us to—to get dinner. So we went all the way from breakfast the first day with no nothing besides bottles of water that were hot, because it was very hot on that van, very hot.
>
> . . .

> So we went all day without—we didn't get dinner, nothing. And the next morning when we finally did go through a drive-through again it was McDonald's, and it was like one sausage biscuit and a cup of water. That's all we got.

(Doc. 115 at 17–18 (Pl.'s Depo. at 105:24–106:17).) Plaintiff testified that she is allergic to gluten and cannot eat bread, and that this information was in her paperwork, but when she informed Defendants Moore and Weiss of her allergy, they responded that "[i]f [she] can't eat it, [she] can't eat it, that they're not here to give [her] a special diet, just to make sure [she] ha[s] food." (*Id.* at 18–19 (Pl's Depo. at 106:18–107:18).) However, according to Defendant Moore, "if an inmate had certain diagnosed dietary restrictions, such as a gluten intolerance, the drivers would adhere to those requirements." (Doc. 104 (Def. Moore's Statement of Facts) ¶ 15.) According to the notes from Plaintiff's September 25, 2016 post-transport medical examination, Plaintiff reported that she was "not on a special diet at home" and she appeared "well hydrated, well nourished, [and] in no obvious distress." (Doc. 104-2 at 51–52.)

Plaintiff states that restroom breaks took place "based on when a location was available that was deemed appropriate by the guards for a group of inmates in shackles to use the restroom." (Doc. 114 ¶ 20.) According to Defendant Moore, restroom breaks took place "either when the van stopped for gas, when Defendants dropped an inmate off at a prison/jail, or when an inmate requested to use the restroom and it was feasible to stop"; this was typically every three to four hours. (Doc. 104 ¶¶ 19–20.) In his sworn affidavit, Dametri Jacobs, who was a detainee on Plaintiff's transport, states that "the van would stop only three times in a twenty-four hour period for bathroom breaks." (Doc. 118 at 23.) Plaintiff testified that she and the other tranportees were not given an opportunity to shower, clean up, or brush their teeth. (*Id.* ¶ 22.)

Plaintiff testified that on one occasion during the transport, the van was parked in a parking lot for five hours while Defendants were waiting to pick up another transportee, and even though "[i]t was very, very, very, hot outside," Defendants did not provide Plaintiff and the other transportees with anything to drink or turn on the van's air

conditioning. (Doc. 117-1 at 18–19 (Jackson Depo. at 108:22–109:13.) She also testified that during the trip, the air conditioner was on "sometimes" but "it didn't blow hard enough to circulate and cool that entire van." (*Id.* at 109:16–18.)

### C.   Prior Allegations Against Defendant Weiss

At deposition, Defendant Moore testified that on a previous transport, she saw Defendant Weiss rubbing a female transportee's calf, but she did not report it at that time to Cagle or anyone else at ISC until the following week when she reported it to Cagle during the investigation into Plaintiff's allegations. (Doc. 111-1 at 34–36 (Moore Depo. at 41:1–43:25).) In her Response to ISC's Statement of Facts, Plaintiff states that "[i]t is obvious from the text messages between Ryan Moore and Randy Cagle that Cagle had prior knowledge of Chris Weiss's sexual conduct with inmates prior to [Plaintiff's] transport." (Doc. 111 ¶ 50(b).) Plaintiff provided copies of several pages of text messages (Doc. 111-1 at 67–76), but she did not specifically cite the text message that supports her stated fact. Further, many of the text messages that Plaintiff provided are illegible. The Court reviewed the readable text messages and was unable to find a text that supports Plaintiff's statement. Plaintiff testified at deposition that during her conversation with Cagle at ISC headquarters, Cagle mentioned the previous incident involving Defendant Weiss and the female transportee. (Doc. 111-1 at 26 (Jackson Depo. at 220:11–25).

### IV.   Exhaustion

ISC argues that Plaintiff's claims must be dismissed because she failed to exhaust the administrative remedies that were available to her prior to filing this action. (Doc. 98 at 9.) Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523

(2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that she, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If the defendants move for summary judgment for failure to exhaust and the evidence shows that the plaintiff did, in fact, exhaust all available administrative remedies, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on the issue. *See Albino*, 747 F.3d at 1176 (pro se prisoner did not cross-move for summary judgment on issue of exhaustion, but because he would have succeeded had he made such a motion, sua sponte grant of summary judgment was appropriate).

The Court will deny summary judgment to ISC on exhaustion grounds. ISC has not met its original burden of showing that there was an available administrative remedy available to Plaintiff. Without providing any evidence of the HCJ's administrative grievance policy, ISC argues, in conclusory fashion, that "Plaintiff has not even used, much less exhausted, her available administrative remedies, thus barring her claims as a matter of law." (Doc. 98 at 9.) There is no evidence in the record outlining the process an inmate must follow to exhaust a grievance at the HCJ or that such a remedy was available to Plaintiff during her time at the facility. ISC's one-paragraph argument concerning exhaustion (*see* Doc. 98 at 9), absent any evidence of an available remedy, is insufficient

grounds for summary judgment. Therefore, the Court will address the merits of Plaintiff's claims.

**V.      Federal Claims (Count Five)**

      **A.      Defendant ISC**

To succeed on a § 1983 claim against a private entity serving a traditional public function, such as transporting inmates, Plaintiff must show that she: (1) suffered a constitutional injury; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional injury. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978); *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1138-39 (9th Cir. 2012). Further, if the policy or custom in question is an unwritten one, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

ISC argues that it is entitled to summary judgment on Plaintiff's § 1983 claims because there is no evidence that Plaintiff's constitutional rights were violated as a result of an ISC policy or practice. (Doc. 125 at 7–8.) In response, Plaintiff argues that *Monell* does not apply in this case and seems to conflate the concept of vicarious liability with the separate concept of qualified immunity; ISC is not seeking qualified immunity. (*see* Doc. 112 at 17–18). Plaintiff concedes that ISC "was performing an 'exclusive government function'" and that it was a state actor, and the record evidence supports such a finding. (*Id.* at 15.) Therefore, *Monell* provides the proper framework for analyzing Plaintiff's federal claims against ISC.

The record shows that ISC policy prohibits its employees from socializing or fraternizing with transportees, that there is a zero-tolerance policy for sexual misconduct, and that during a transport, male employees were required to escort male transportees to the restroom during restroom breaks, and female employees were required to escort female transportees. ISC policy requires one male and one female driver on all transports. With

respect to the conditions on the transport van, under ISC policy, ISC employees were required to replace a transportee's clothing if his or her clothing became soiled during transport and were required to maintain a supply of hygiene kits for transportees to use. The policy also required employees to keep an active supply of bottled water during transport and provided an approved list of restaurants for feeding transportees including Burger King, Jack in the Box, Sonic, Subway, Arby's, and Little Caesar. Under ISC policy, ISC employees are required to undergo a full background screening, drug testing, CPR/first aid certification, psychological evaluation, and 40 hours of classroom training in the proper handling and restraining of transportees. Further, it is undisputed that upon being informed of possible inappropriate behavior between Plaintiff and Defendant Weiss, Randy Cagle ordered the parties to return to ISC headquarters, questioned Plaintiff and Defendants, and removed Defendant Weiss from the remainder of the transport.

In the Complaint, Plaintiff alleges that ISC has a policy or custom of allowing male drivers to remain unsupervised while transporting female detainees despite being aware that Defendant Weiss had sexually assaulted a transportee in the past, but she does not present any facts to refute ISC's evidence of its policies and procedures. Additionally, to the extent Plaintiff argues that Cagle should have known that Defendant Weiss posed a risk to her safety based on a prior incident between Defendant Weiss and another female transportee that occurred the week before Plaintiff's transport, the evidence shows that Cagle was not aware of this previous incident until he began investigating the events of Plaintiff's transport. Plaintiff also contends that the classroom component of ISC employee training only consists of "explaining what paperwork is needed to pick up inmates and how to put handcuffs, belly chains and shackles on inmates." (Doc. 111 ¶ 15(a).) Even if this is true, it does not support a finding that "the need for more or different training is [so] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

On these facts, there is ample evidence in the record showing that ISC had policies in place to facilitate the safe transport of inmates who were placed in its custody. Further, when Randy Cagle was informed of a possible violation of ISC policy, he responded promptly, questioned the parties involved, and removed Defendant Weiss from the remainder of the transport. Plaintiff has failed to refute ISC's evidence regarding its policies and has failed to present facts showing that ISC's policy was so deficient that it amounted to deliberate indifference in violation of her constitutional rights; therefore, her federal constitutional claims against ISC fail as a matter of law. Accordingly, the Court will grant summary judgment to ISC as to all of Plaintiff's § 1983 claims.

### B.    Defendant Moore

Plaintiff alleges that Defendant Moore failed to prevent her from being sexually assaulted and that she was subjected unlawful conditions of confinement, unreasonable seizures, and invasions of her right to bodily integrity during the transport.

### 1.    Fourteenth Amendment Claims[7]

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee may therefore allege a cause of action under the Due Process Clause where conditions of confinement, such as food, clothing, shelter, medical care, and personal safety, "amount to punishment." *Bell*, 441 U.S. at 535; *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Conditions amount to punishment when: (1) the conditions result in a sufficiently serious denial of the minimum standard of care, and (2) the official's actions or omissions with respect to the conditions are objectively unreasonable, such that it can be inferred that those conditions are imposed for the purpose of punishment. *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015); *Bell*, 441 U.S. at 538; *Castro v. Cnty. of Los Angeles*, 833 F.3d

---

[7] Because Plaintiff was a pretrial detainee during the events underlying the Complaint, Plaintiff's failure to protect and conditions of confinement claims arise under the Fourteenth Amendment, not the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 and n. 16 (1979). Therefore, Plaintiff's Eighth Amendment claim will be dismissed.

1060, 1070-71 (9th Cir. 2016). Thus, to succeed on a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must present facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). However, "a de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* The same standards apply to a pretrial detainee's threat-to-safety or failure-to-protect claim. *Id.*

### a.     Failure to Protect

The Court will grant summary judgment to Defendant Moore as to Plaintiff's failure-to-protect claim. It is undisputed that prior to Defendant Moore observing Plaintiff's hand in Defendant Weiss' groin area, Plaintiff had not mentioned any inappropriate behavior by Defendant Weiss to Defendant Moore. It is also undisputed that after observing what she believed to be inappropriate contact between Plaintiff and Defendant Weiss, Defendant Moore confronted Plaintiff, and Plaintiff denied that anything was going on between her and Defendant Weiss. Nonetheless, the following morning, Defendant Moore took reasonable measures to abate the risk of harm to Plaintiff by

contacting ISC owner Randy Cagle and informing him of what she saw. The evidence also shows that during the alleged sexual assault in the rest stop bathroom, Defendant Moore was sleeping in the van and was not aware that Defendant Weiss and Plaintiff had left the van or that they were in the bathroom alone. Under these circumstances, it would not have been obvious to a reasonable officer in Defendant Moore's position that the consequences of napping in shifts with Defendant Weiss would have placed Plaintiff at a substantial risk of suffering serious harm. Absent any evidence in the record showing that Defendant Moore's actions were objectively unreasonable or that her actions amounted to punishment, Plaintiff's failure to protect claim against Defendant Moore must be dismissed.

### b.      Conditions of Confinement

Defendant Moore argues that Plaintiff's conditions of confinement claim should be dismissed because the conditions during Plaintiff's transport did not amount to a constitutional violation. (Doc. 103 at 9–14.) In response, Plaintiff argues that during her eight-day transport,

> [S]he was handcuffed, with attached belly chain, in a transport van which had neither sleeping facilities nor restroom facilities. She was not permitted the opportunity to brush her teeth or shower throughout the duration of the transport. She received bottled water sparingly and was provided only fast food meals two times daily, had no exercise other than walking to a restroom when permitted to do so, and was repeatedly subjected to sexual assault by Chris Weiss culminating in forced vaginal penetration at a rest stop in Arizona.

(Doc. 119 at 4.)

On this record, the facts do not show that the conditions Plaintiff endured during the transport placed her "at a substantial risk of suffering serious harm." *Gordon*, 888 F.3d 1125. The undisputed evidence shows that Plaintiff received two meals a day, had access to bottled water on the van, and that bathroom breaks were permitted during gas stops and when feasible under the circumstances, typically every three to four hours. Even accepting as true transportee Dametri Jacobs' statement that "during the transport, the van would stop

only three times in a twenty-four hour period for bathroom breaks[,]" Plaintiff does not claim that at any time during the transport she asked to use the restroom and was denied or that she was forced to soil herself due to lack of restroom breaks. (Doc. 113-1 at 55 (Jacobs Aff.).) Plaintiff testified that once during the transport, she and the other transportees only received breakfast and were not provided dinner; but missing one meal does not amount to a "denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Neither does having to drink hot bottled water. Accepting as true Plaintiff's assertions that she is allergic to gluten and that Defendants gave her meals containing bread, there is no evidence that she was unable to remove the bread from her meals herself or that she was forced to eat any food containing gluten. Further, although Plaintiff's restraints may have been uncomfortable, there is no evidence that her restraints were unreasonably tight or harmful, or that they hindered her from sleeping during the transport. Likewise, there is no evidence that being unable to exercise, shower, or brush her teeth for approximately one week placed Plaintiff at a substantial risk of harm. Plaintiff testified that during the transport, although the air conditioner was on, it did not cool the entire van; but the evidence fails to establish a substantial risk of harm where it shows that Plaintiff was seated in the front row of the van directly behind Defendants Moore and Weiss, and Plaintiff does not claim that she personally could not feel the air conditioner from where she was seated. Plaintiff also testified that on one unspecified day while Defendants Moore and Weiss were picking up another transportee, the transport van was parked in a parking lot for five hours with no air conditioning even though it was very hot that day. While this presents a closer call as to whether Plaintiff was placed at a substantial risk of serious harm, absent any competent evidence showing that Plaintiff was injured as a result of any of the conditions on the transport, her conditions of confinement claim fails, especially where the notes from her post-transport examination, indicated that Plaintiff was well-hydrated and well-nourished with no obvious distress. Plaintiff has not presented any evidence that she suffered from unhealthy weight loss, muscle atrophy, dehydration, or any other facts that would suggest her health was adversely affected in any way by the

conditions on the transport. For the foregoing reasons, with respect to the conditions on the transport, Defendant Moore has met her burden at summary judgment on the *Gordon* factors of substantial risk of harm and actual injury. *See Covalt v. Inmate Servs. Corp.*, No. 15-CV-685-LTB, 2015 WL 2207700, at *5 (D. Colo. May 8, 2015) (holding that a pretrial detainee's allegations of uncomfortable seating, lack of exercise and personal hygiene, and insufficient food, water, and bathrooms breaks during a seven-day, cross-country transport did not state a Fourteenth Amendment claim and noting that "[a] greyhound bus traveler would experience similar deprivations taking a trip across the country").

To the extent Plaintiff argues that the sexual assaults constituted a condition of confinement, there is no evidence that Defendant Moore "made an intentional decision with respect" to that condition so as to place Plaintiff at a substantial risk of harm. As discussed, Plaintiff did not report any of the sexual assaults to Defendant Moore, and after Defendant Moore became aware of possible inappropriate contact between Defendant Weiss and Plaintiff, she confronted Plaintiff about it and reported the incident to Cagle, thus taking reasonable available measures to abate the risk of harm to Plaintiff. Consequently, as to Plaintiff's sexual assault allegations, Defendant Moore has met her burden on the *Gordon* factors of intentional decision and risk abatement.

Construing the evidence in Plaintiff's favor, Defendant Moore's actions during the transport did not deprive Plaintiff of adequate shelter, food, water, or sanitation such that she could be said to have been deprived of the minimal civilized measure of life's necessities during the eight days of travel. Plaintiff has not identified admissible evidence that creates a material factual dispute, and the record does not support a finding that Defendant Moore's actions taken during Plaintiff's transport amounted to a constitutional violation. Accordingly, Plaintiff's conditions of confinement claim against Defendant Moore will be dismissed.

### 2.      Fourth Amendment Claim

The Court will also dismiss Plaintiff's Fourth Amendment claim against Defendant Moore. In the Complaint, Plaintiff alleges that she "was subject[ed] to unreasonable

seizures and invasions of her right to privacy, and Defendants violated her right to bodily integrity." (Doc. 1 ¶ 81.) Defendant Moore moves for summary judgment on this claim based on the fact that there are no specific facts showing that she was involved in or aware of the sexual misconduct that occurred during Plaintiff's transport. (Doc. 103 at 16.) In response, Plaintiff cites the Eleventh Circuit's decision in *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441–42 (11th Cir. 1985), in which the court stated:

> It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.

(Doc. 119 at 11.)[8]

The Ninth Circuit has similarly held that an officer's failure to intervene can support an excessive force claim where a bystander-officer has a realistic opportunity to intervene but fails to do so. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (police officers can be liable for failing to intercede "when their fellow officers violate the constitutional rights of a suspect or other citizen," but only if they had an opportunity to intercede) (internal citation and quotation omitted). However, that is not the case here. The evidence is undisputed that Plaintiff did not report any of Defendant Weiss' sexual misconduct, including the rape, to Defendant Moore during the transport. It is also undisputed that upon observing Plaintiff's hand in Defendant Weiss' groin area, Defendant Moore confronted Plaintiff and subsequently reported the incident to Randy Cagle. Thus, she took reasonable steps to intervene in the one instance of sexual misconduct that she observed between Defendant Weiss and Plaintiff. There is no evidence that Defendant Moore witnessed any of the other instances of sexual misconduct, or that she had a realistic opportunity to intervene in those instances

---

[8] Based on Plaintiff's citation to the Eleventh Circuit's excessive force standard, the Court will construe Plaintiff's Fourth Amendment claim as an excessive force claim since she did not clearly specify the nature of her Fourth Amendment claim in the Complaint.

1   and failed to do so. Accordingly, Plaintiff's Fourth Amendment excessive force claim

2   against Defendant Moore will be dismissed.[9]

3   **VI.   State Law Claims**

4       **A.   Choice of Law**

5       As an initial matter, the parties dispute whether Arizona, Arkansas, or Alabama law

6   applies to Plaintiff's state law claims. Plaintiff argues that Arkansas law governs her

7   negligence claim against ISC and that Alabama law governs her contract claim against ISC.

8   (Doc. 112 at 4–5, 13.) Although Plaintiff does not specifically state that Alabama law

9   applies to her negligence claim against Defendant Moore, she cites to Alabama law in her

10  argument pertaining to that claim. (*See* Doc. 119 at 16.) ISC contends that Arizona law

11  governs all of Plaintiff's state law claims. (Doc. 125 at 2–3.)

12      In a federal-question action involving supplemental jurisdiction over state law

13  claims, the Court applies the choice of law rules of the forum state. *Paulson v. CNF Inc.*,

14  559 F.3d 1061, 1080 (9th Cir. 2009), citing *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir.

15  2002) ("When a federal court sits in diversity, it must look to the forum state's choice of

16  law rules to determine the controlling substantive law."); *Bass v. First Pac. Networks, Inc.*,

17  219 F.3d 1052, 1055 n. 2 (9th Cir. 2000) ("[A] federal court exercising supplemental

18  jurisdiction over state law claims is bound to apply the law of the forum state to the same

19  extent as if it were exercising its diversity jurisdiction."); *see also Klaxon Co. v. Stentor*

20  *Electric Mfg., Co*., 313 U.S. 487, 496 (1941); *Ledesma v. Jack Stewart Produce, Inc*., 816

21  F.2d 482, 484 (9th Cir. 1987).

22      Under Arizona law, "courts are required to resolve tort issues under the law of the

23  state having the most significant relationship to both the occurrence and the parties with

24  respect to any particular questions." *Sutter Home Winery, Inc. v. Vintage Selections*, 971

25  F.2d 401, 407 (9th Cir. 1992) (citing *Bates v. Superior Court*, *Maricopa County*, 749 P.2d

26  1367, 1370 (Ariz. 1988)). Arizona courts apply the Restatement (Second) of Conflicts of

27

28        [9] Because Plaintiff's § 1983 claims against Defendant Moore are being dismissed on the merits, the Court will not address Defendant Moore's qualified immunity argument.

Laws (1971) and consider four factors in making this determination: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile of the parties, and (4) the place where the parties' relationship is centered. *Bates*, 749 P.2d at 1369-70. The analysis is qualitative not quantitative. *Id.* at 1370.

In *Bates*, the court noted that the Restatement provides a specific qualitative guideline for personal injury cases:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the [§ 6 Choice-of-Law Principles] to the occurrence and the parties, in which event the local law of the other state will be applied.

*Bates*, 749 P.2d at 1370 (citing Restatement § 146).

With respect to Plaintiff's negligent supervision and retention claim against ISC, the Court will apply Arkansas law. Although the record supports that one of Plaintiff's injuries—the restroom sexual assault—occurred in Arizona, there is no evidence in the record of where, during the cross-country transport, the other sexual assaults took place. On the other hand, ISC is headquartered in Arkansas and decisions regarding Defendants Weiss and Moore's employment and supervision were made in Arkansas. Cagle's investigation also took place at the ISC headquarters in Arkansas. On these facts, the Court finds that Arkansas has a more significant relationship to Plaintiff's negligence claim against ISC than Arizona.

The Court will also apply Arkansas law to Plaintiff's contract claim against ISC. Under § 187 of the Restatement, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied," but in this case, the details of the contract between ISC and the HCJ have not been placed in the record. Absent any evidence that ISC and the HCJ's contract specified what state law would apply to any disputes, the Court must apply the law of the state that has the most significant relationship to the transaction and the parties by considering the following factors: the place of contracting; the place of

negotiating; the place of performance; the location of the subject matter of the contract; and the domicile of the parties to the contract. *Id.* § 188.

Plaintiff states that ISC and the HCJ entered into an "oral transport agreement" but fails to cite to where this is supported in the record. (Doc. 112 at 13.) On the limited evidence provided regarding the terms of the contract, the Court is unable to determine where the contract was negotiated and formed. Contrary to Plaintiff's argument, based on the available evidence, other than being a party to the contract, Alabama has no other relationship to the events underlying her claim. Plaintiff's injuries took place before she arrived in Alabama, none of the parties to this action are domiciled in Alabama, the alleged breach of contract was committed by ISC who is headquartered in Arkansas. The place of performance and subject matter of the contract are less informative to the Court's analysis because the contract was performed throughout multiple states during the course of the transport. Accordingly, based on the available facts regarding the contract between ISC and the HCJ, the Court will also apply Arkansas law to Plaintiff's breach of contract claim against ISC.

## B. Defendant Moore

Plaintiff alleges that Defendant Moore negligently breached the duty of care that she owed to Plaintiff by: (a) failing to protect her from sexual assaults by Defendant Weiss; (b) failing to obtain medical treatment for Jackson; (c) failing to report the sexual assault to law enforcement; and (d) transporting Jackson under inhumane and tragically unsafe conditions. (Doc. 1 ¶ 68.)

As mentioned previously, Plaintiff cites to an Alabama case in her argument on this claim, but she does not specifically argue for the Court to apply Alabama law to her negligence claim against Defendant Moore. (*See* Doc. 119 at 16.) On the other hand, Defendant Moore cites to Ninth Circuit cases in her argument for dismissal of the negligence claim. (Doc. 103 at 19.)[10] However, neither party has set forth the applicable

---

[10] Defendant Moore relies on the Ninth Circuit's decision in *Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003), for the proposition that because Plaintiff's § 1983 claims have been dismissed "so too does her state law negligence claims fail." (*See* Doc. 103

negligence standard or applied said standard to the facts of this case. (*See* Doc. 103 at 19–20; Doc. 119 at 15–16; Doc. 130 at 16–17.)[11] Accordingly, there remains a material question of fact as to whether Defendant Moore's conduct during the transport amounted to negligence, and the Court will deny Defendant Moore's Motion for Summary Judgment with respect to Plaintiff's state law negligence claim.

### C.   Defendant ISC

#### 1.   Negligent Supervision and Retention (Count One)

Under Arkansas law, "employers are subject to direct liability for their negligent supervision or negligent retention of employees when third parties are injured as a result of the tortious acts of those employees." *Saine v. Comcast Cablevision of Ark., Inc.*, 126 S.W.3d 339, 342 (Ark. 2003). To succeed on such a claim requires "proof that the employer knew, or through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm." *Id.*

Plaintiff argues that Cagle was aware of Defendant Weiss' previous sexual misconduct towards another female transportee and knew or should have known through the exercise of ordinary care that his "conduct would subject third parties to an unreasonable risk of harm." (Doc. 112 at 6.) Defendant argues, and the Court agrees, that the evidence in the records shows that Cagle was not informed of this prior incident until September 22, 2016 when he began investigating the events of Plaintiff's transport. Defendant Moore testified that she did not mention the previous incident to Cagle until she informed him of what she had observed between Defendant Weiss and Plaintiff. After

---

at 19.) Plaintiff's reliance on *Miller* is misplaced. In *Miller*, the court found that dismissal of the plaintiff's Fourth Amendment excessive force claim necessarily required the dismissal of his state law assault and battery claim because "under Washington law a police officer is liable for assault or battery in effecting an arrest only if the officer used force unreasonable under the . . . Fourth Amendment." *Miller*, 340 F.3d 968, n.14. The court's holding applies within the specific context of an excessive force claim and Washington's assault and battery statute. It was not intended as a blanket conclusion that dismissal of § 1983 automatically nullifies a state law claim. For the same reason, Defendant Moore's reliance on *Marquez v. City of Phoenix*, 693 F.3d 1167 (9th Cir. 2013) is misplaced as well. (*See* Doc. 103 at 19.)

[11] Because the parties failed to establish the negligence standard, the Court will not address which state's law applies to Plaintiff's negligence claim against Defendant Moore.

Defendant Moore told Cagle what she observed, he promptly called everyone back to ISC headquarters, investigated the situation, and removed Defendant Weiss from the transport. On these facts, the record does not support a finding that ISC knew or should have known that Defendant Weiss posed an unreasonable risk of harm to third parties. Accordingly, Plaintiff's negligent supervision and retention claim against ISC will be dismissed.

## 2. Breach of Contract (Count Two)

In Arkansas, it is presumed "that parties contract only for themselves and thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties." *Elsner v. Farmers Ins. Group, Inc.*, 220 S.W.3d 633, 635 (Ark. 2005). "If a contract is made for the benefit of a third party, then it is actionable by such third party if there is substantial evidence of a clear intention to benefit that third party." (*Id.*)

The available facts do not overcome the presumption that ISC and the HCJ contracted only for themselves. It is undisputed that Plaintiff was not a party to the contract. Neither the contract nor its particular terms have been presented in the record, so there is no evidence that ISC and the HCJ clearly intended to benefit Plaintiff. Plaintiff argues that "[t]he oral contract in question was made specifically for the purpose of transporting one person, the Plaintiff herein, from Colorado to Alabama. Plaintiff was to have received the direct as opposed to the incidental benefit of the safety provision implied as part of the contract." (Doc. 112 at 13.) But again, as with many of Plaintiff's other arguments, she does not cite to a specific portion of the record to support this statement. Absent any evidence that ICS and the HCJ intended to directly benefit Plaintiff by entering into a contract, the Court presumes that they only intended to contract for themselves, and Plaintiff's breach of contract claim must be dismissed.[12]

---

[12] The Court would reach the same conclusion even if it applied Alabama law, which operates under a nearly identical standard to Arkansas for third-party breach of contract claims. *See Swann v. Hunter*, 630 So.2d 374, 376 (Ala. 1993) ("To recover in a breach of contract action, as a third-party beneficiary, the plaintiff must prove the following: (1) that the contracting parties intended, when they entered the contract, to bestow a direct, as opposed to an incidental, benefit upon a third party, (2) that the plaintiff was the intended third-party beneficiary of the contract, and (3) that the contract was breached.").

### 3.    Vicarious Liability (Counts Three and Four)

In Counts Three and Four, Plaintiff seeks to impute Defendants Moore and Weiss' allegedly negligent conduct to ISC. (Doc. 1 ¶¶ 60, 66.)

Under Arizona law,[13] "an employer may be held vicariously liable under the doctrine of respondeat superior for the negligent acts of its employee acting within the course and scope of employment." *Premier Funding Groups LLC v. Aviva Life and Annuity Co.*, CV 14-01633-PHX-DGC, 2015 WL 789743, at *6 (D. Ariz. Feb. 25, 2015) (quoting *Engler v. Gulf Interstate Eng'g, Inc.*, 258 P.3d 304, 309 (Ariz. App. 2011)). "An employee's conduct falls within the scope of employment if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Id.* at 700 (internal citation omitted). To establish vicarious liability for an employee's negligent acts, the employee must be "(1) subject to the employer's control or right of control, and (2) acting in furtherance of the employer's business." *Engler*, 258 P.3d at 492 (citing *Robarge v. Bechtel Power Corp.*, 640 P.2d 211, 214 (Ariz. App. 1982)). "A wrongful act committed by an employee while acting in his employer's business does not take the employee out of the scope of employment, even if the employer has expressly forbidden the act." *Ortiz v. Clinton*, 928 P.2d 718, 723 (Ariz. App. 1996). Therefore, "an employee's improper actions, even those serving personal desires, will be deemed motivated to serve the employer if those actions are incidental to the employee's legitimate work activity." *Dube v. Desai*, 186 P.3d 587, 590 (Ariz. App. 2008); *see State v. Schallock*, 941 P.2d 1275, 1283 (Ariz. 1997) (when a supervisor harasses an employee from some personal desire, he commits the harassment in the course and scope of performing his duties, so long as he is authorized to perform those duties). Whether an employee's tortious conduct falls within the scope of employment is generally a question of fact. *McCloud v. State, Ariz. Dep't of Pub. Safety*, 170 P.3d 691, 700 (Ariz. App. 2007).

---

[13] The parties cite to Arizona case law in their arguments, so the Court will apply Arizona law to Plaintiff's vicarious liability claim against ISC. (*See* Doc. 98 at 15–17; Doc. 112 at 14–15; Doc. 125 at 6–7.)

ISC argues that it cannot be held vicariously liable for Defendant Moore and Weiss' conduct because they were not acting within the scope of their employment when the allegedly tortious conduct occurred. (Doc. 98 at 15 (citing *Smith v. Am. Exp. Travel Related Servs. Co.*, 876 P.2d 1166 (Ariz. App. 1994).) Plaintiff contends that Defendants were acting within the scope of their employment when the allegedly tortious acts were committed. (Doc. 112 at 14 (citing *Schallock*, 941 P.2d at 1283 .)

Under the given facts, there remains a triable issue of fact as to whether Defendants Moore and Weiss were acting within the scope of their employment when they committed the purportedly negligent acts. Plaintiff alleges that the conditions of her transport were inhumane and unsafe, and the undisputed facts show that Defendants Moore and Weiss were responsible for feeding, restraining, monitoring, and providing a safe environment for Plaintiff during the course of the transport. Even if their conduct violated ISC policy, this does not prohibit their actions from being imputed to ISC under these circumstances where a reasonable jury could find that Defendants Moore and Weiss' actions were taken in furtherance of ISC's business. Likewise, even though ISC policy expressly forbids sexual contact between employees and transportees, an employee who violates this policy may act within the course of his or employment. *See Schallock*, 941 P.2d at 1283 (an employee may act within the scope of authorized employment when sexually harassing subordinates). Accordingly, the Court will deny ISC's Motion for Summary Judgment with respect to Plaintiff's claim that ISC is liable for Defendant Moore and Weiss' allegedly negligent conduct.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendant ISC's Motion for Summary Judgment (Doc. 98) and Defendant Moore's Motion for Summary Judgment (Doc. 106).

(2)     Defendant ISC's Motion for Summary Judgment (Doc. 98) is **denied** as to Plaintiff's state law claim that ISC is vicariously liable for Defendants Moore and Weiss' negligence, and the Motion is **granted** as to the remainder of Plaintiff's claims against ISC.

(3)     Defendant Moore's Motion for Summary Judgment (Doc. 106) is **denied** as to Plaintiff's state law negligence claim, and the Motion is **granted** as to the remainder of Plaintiff's claims against Defendant Moore.

(4)     This matter is referred to Magistrate Judge Eileen S. Willett for a settlement conference. Counsel for the parties are to confer and contact the chambers of Judge Willett at (602)-322-7620 to schedule a settlement conference.

Dated this 26th day of June, 2019.

Honorable John J. Tuchi
United States District Judge